**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 18-3553 and 19-0748.

Caption [use short title]

Motion for: Reinstantement of appeal, and leave
to file appellant's brief and the 5th volume of the
5-volume appendix.

Set forth below precise, complete statement of relief sought:
Pursuant to Fed. R. App. P. 2 and L.R. 27.1(i), pro se,
mentally disabled plaintiff-appellant requests that
The Court vacate the prior dismissal order, reinstate
the appeal, and grant appellant permission to file
appellant's principal brief and the 5th volume of
the 5-volume appendix.

Heendeniya

v.

St. Joseph's Hospital Health Center, et al.

MOVING PARTY: Umesh Heendeniya, pro se mentally disabled.   OPPOSING PARTY: St. Joseph's Hospital Health Center, et al.,

- [✓] Plaintiff      [ ] Defendant
- [✓] Appellant/Petitioner   [ ] Appellee/Respondent

MOVING ATTORNEY:                          OPPOSING ATTORNEY: Robert John Smith, Esq.

[name of attorney, with firm, address, phone number and e-mail] Costello, Cooney & Fearon, PLLC

Pro se, mentally disabled plaintiff-appellant does      Bridgewater Place

not have an Attorney.      500 Plum Street, Suite 300, Syracuse, NY-13204.

P. O. Box 5104, Spring Hill, Florida, 34611.      Phone: (315)-422-1152 , Fax: (315)-422-1139, RJS@CCF-Law.com

(508)-630-6757  heendeniyavsjosephshospitalny@gmail.com
Court- Judge/ Agency appealed from:   Honorable Glenn T. Suddaby, Chief U.S. District Judge, Northern District of New York.

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
[ ] Yes [✓] No (explain): Opposing counsel have resorted to
scorched earth tactics in the past, and thus no goodwill
or mutual cooperation exists.

Opposing counsel's position on motion:
[ ] Unopposed [ ] Opposed [✓] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes [ ] No [✓] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:** N/A.
Has this request for relief been made below? N/A.   [ ] Yes [ ] No
Has this relief been previously sought in this court? N/A.   [ ] Yes [ ] No
Requested return date and explanation of emergency:

Is oral argument on motion requested?   [ ] Yes [✓] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   [ ] Yes [✓] No If yes, enter date:

pro se plaintiff-appellant:
Signature of Moving Attorney:

_[signature]_   Date: Nov. 06, 2019.   Service by: [✓] CM/ECF   [ ] Other [Attach proof of service]

Form T-1080 (rev.12-13)

The pro se, mentally disabled Plaintiff-Appellant Umesh Heendeniya (henceforth "Heendeniya") hereby respectfully moves The Court, pursuant to Fed. R. App. P. 2, Local Rule 27.1(i), and *Wapnick* v. *Commissioner of Internal Revenue* 365 F.3d. 131 (2d Cir. 2004), requesting The Court: **(i)**. To reinstate the appeal and grant him leave to file the Appellant's brief and the 5th volume of the 5-volume appendix; **(ii)**. To accept the 50-Exhibits that are contained in the 11 (eleven) Volumes of the Supplementary Papers, which exhibits are referred to and incorporated in full in the instant motion and are an essential & integral part/supplement of this motion; **(iii)**. To order the Defendants-Appellees to prepare and file the appellees' briefs. In support of this, Heendeniya states the following facts:

## SUMMARY

**1.**    With great respect to the U.S. Court of Appeals for The Second Circuit, Plaintiff-Appellant Heendeniya posits that because he is pro se, and is not a trained legal professional like the 6 (six) attorneys in the 3 (three) law firms who're representing the 22 Defendants-Appellees in this case, he should be given significant, extra time durations and be given special solicitude in order to prepare appellate briefs and legal memorandums.

**2.**    In addition, because Heendeniya is also mentally disabled, he should be given Reasonable Disability Accommodation by The Court pursuant to, Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, The Fifth and Fourteenth Amendments to the U.S. Constitution (the Equal Protection clause and/or the Due

process clause), The Petition Clause of the First Amendment, *Tennessee* v. *Lane*, 541 U.S. 509 (2004), *California Motor Transport Co.* v. *Trucking Unlimited*, 404 US 508, 510 (1972), *Alexander* v. *Choate*, 469 U.S. 287, 301 (1985), *Kennedy* v. *Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999), *Oconomowoc Residential Programs* v. *City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002), and the prior listed cases' progeny.

**3.**    Therefore, as a result of Heendeniya's pro se status <u>combined</u> with his mentally disabled status, he should be given extra leeway and special accommodation <u>in terms of time</u> to research, prepare, and write appellate briefs and legal memorandums that is well beyond that afforded to pro se, non-attorney litigants.

**4.**    Additionally, as a result of the mental harassment, intimidation, and fear that Heendeniya has been subjected to (intensely since Friday, January 15, 2016, when he was unlawfully and forcefully/coercively interrogated at his home by 2 FBI Agents and 1 Hernando County Sheriff's Office Detective from the Tampa-Orlando Joint Terrorism Task Force-- JTTF) by Agents/Troopers/Deputies/Officers of The Tampa-Orlando JTTF, Heendeniya's ability to research, prepare, and write complex documents such as legal briefs and legal memorandums as well as meet deadlines has been significantly detrimentally affected.

## PROCEDURAL HISTORY

**5.**    On July 18, 2016, Heendeniya filed the second amended complaint in the instant case.

**6.**     On October 25, 2018, the District Court entered a Decision and Order

granting the 22 Defendants' request for dismissal of the instant case. On the same

day, the Court entered Judgment in favor of the Defendants.

**7.**     On Nov. 23, 2018, Heendeniya filed a motion pursuant to Fed. R. Civ. P. 59(e)

and Fed. R. Civ. P. 60(b)(6) seeking relief.

**8.**     On Nov. 25, 2018, Heendeniya filed his first notice of appeal.

**9.**     On Feb. 28, 2019, the Court entered an order on Heendeniya's Fed. R. Civ. P.

59(e) and Fed. R. Civ. P. 60(b)(6) motion, ruling in favor of the 22 Defendants.

**10.**     On March 25, 2019, Heendeniya filed his second notice of appeal.

**11.**     On April 04, 2019, Heendeniya filed the required pro se Scheduling

Notification pursuant to Local Rule 31.2(a)(1)(A) and Local Rule 31.2(a)(1)(D)

choosing October 20, 2019 as the minimum date within which he hoped to be able to

research, prepare, and write the Appellant's brief and the Appellant's appendix.

**12.**     The Court deemed Monday, October 21, 2019 as the date by which

Appellant's brief and the Appellant's appendix was due.

**13.**     Due to the facts and conditions that were briefly summarized above in ¶¶ 1-4

(but underline documented in detail in the Supplementary Papers, Volumes 1 Through 11,

which are incorporated in full as attached exhibits of the instant motion),

Heendeniya was unable to research, prepare, and write the Appellant's brief and

the Appellant's appendix, and was only able to file the first 4 volumes of the

5-volume appendix in the early morning hours of Tuesday, Oct. 22, 2019.

**14.** On Wednesday, October 23, 2019, The Court administratively dismissed the instant appeal.

| STATE OF FLORIDA | ) | |
|---|---|---|
| | ) | *SS.:* |
| COUNTY OF HERNANDO | ) | |

I, Umesh Heendeniya, being a resident of Hernando County, Florida, pursuant to 28 U.S.C. § 1746, declare under the penalties of perjury that the following statements are true and correct except as to the statements which I aver on knowledge, information, or belief formed after reasonable inquiry, and as to them, I believe them to be true:

## FACTUAL BACKGROUND

### I.   MY DOCUMENTED MENTAL AND PHYSICAL DISABILITIES.

**1.** I am the *pro se*, mentally and physically disabled plaintiff-appellant in this appeal.

**2.** I was diagnosed with a Mood Disorder (Type-2 Manic Depression) more than a decade ago, and I was diagnosed with an Anxiety Disorder (Post-Traumatic Stress Disorder (PTSD)) about 20 years ago, and as a result I have been taking medications for many years. *See* the 30-pages contained in Exhibit "2" (Exhibits 1 - 50 are contained in the Supplementary Papers, Volumes 1 Through 11, which are incorporated fully as attached exhibits of the instant motion).

**3.** Due to these documented mental disabilities-- as listed in the complaint that was filed on Oct. 19, 2015, and the second amended complaint that was filed on July

18, 2016-- my cognitive, thinking, ability to focus, and ability to remember things is somewhat limited.

**4.**     This is particularly the case when the subject matter is complex such as jurisprudence, computer science, engineering, etc. In hindsight, it makes sense why it took me 11 years and 5 colleges of university work to complete a 4-year B.Sc. degree in computer science in May, 2000.

**5.**      I have documented physical disabilities, which include some pain, stiffness, and limitations in movement in my right knee (due to 2 Orthoscopic Knee Surgeries in 1995 and 1999) and pain in my lower back (due to a twice injured Herniated Disc Injury), Type-2 Diabetes, Neuropathy, and Hypercholesterolemia. *See* the 30-pages contained in Exhibit "2" (Exhibits 1 - 50 are contained in the Supplementary Papers, Volumes 1 Through 11, which are incorporated in full as attached exhibits of the instant motion).

**II.    DUE IN LARGE PART TO ST. JOSEPH'S HOSPITAL HEALTH CENTER BEING OWNED, CONTROLLED, AND INFLUENCED BY <u>THE CATHOLIC CHURCH</u> IN APRIL, 2013, THE 22 DEFENDANTS-APPELLEES CONSPIRED TO UNLAWFULLY CONFINE HEENDENIYA IN THE PSYCHIATRIC UNIT UNDER INVOLUNTARY STATUS, *PER* NEW YORK MHL §9.27, SO THAT HE WOULD LOSE HIS SECOND AMENDMENT GUN RIGHTS *PER* 18 USC §922(g)(4).**

**6.**     As a clarification, when I refer to the "SJHHC Hospital Defendants-Appellees," I mean the 16 (sixteen) Defendants-Appellees-- St. Joseph's Hospital Health Center (henceforth "SJHHC"), Joanne Mary French, Wendy Briscoe, Susan Lynn Cate, Rosaline Spinella, Cynthia A. Rybak, Kathryn Howe Ruscitto, Lowell A. Seifter, Meredith Price, Deborah Welch, Gael Gilbert, and SJHHC Does 1-5.

**7.**     As another clarification, when I refer to the "Physician Defendants-Appellees," I mean the 6 (six) physician Defendants-Appellees-- Dr. Roger Gary Levine, Dr. Lisa Marie O'Connor, Dr. George O. Tremiti, Dr. Horatius Roman, Dr. Robert Michael Constantine, and Dr. Mitchell Bruce Feldman.

**8.**     During the period of Friday, April 05, 2013 to Wednesday, April 17, 2013, both the SJHHC Hospital Defendants-Appellees and the Physician Defendants-Appellees were either directly owned, controlled, and/or influenced by <u>The Catholic Church</u> due to their financial interests, livelihood, or significant income source.

**9.**     This legal action arose because collectively, the SJHHC Hospital Defendants-Appellees and the Physician Defendants-Appellees subjected me in April, 2013 to a 5-day unlawful, forced confinement in the psychiatric unit of SJHHC, by falsely documenting in 3 (three) official New York MHL §9.27 medical civil commitment forms that I suffered from a Psychotic Disorder (Schizoaffective Disorder) for a long time. This was <u>completely false</u> because I have <u>never been diagnosed with a psychotic disorder</u>.

**10.**     I was brought to SJHHC due to a suicide attempt by me on or about April 05, 2013. However, after I was revived at SJHHC and subsequently kept for 7 days in the Intensive Care Unit (ICU) and the general medical wing, and despite my calm, polite behavior throughout those 7-days with no suicidal or homicidal ideations or intent, the Defendant-Appellants <u>conspired</u> to forcefully confine me (even though at the time I offered to voluntarily admit myself to the psychiatric unit in order to avoid a New York MHL §9.27 medical admission), so that they could deprive me of

my Second Amendment Rights *via* the operation of federal penal code 18 USC §922(g)(4).

**11.**    The above 22 Defendants-Appellees made the decision to unlawfully, coercively confine me in the SJHHC psychiatric unit without making a reasonable effort to call and speak to my long-term treating psychiatrist in Massachusetts, despite me telling them the name of the clinic, the city it's located in, and the name of the psychiatrist.

**12.**    The reason the 22 Defendants-Appellees conspired to deprive me of my Second Amendment Rights *via* the operation of federal penal code 18 USC §922(g)(4), was because in 1995 in Oklahoma, I was forced to defend my life by having to discharge my lawfully possessed handgun. In the subsequent first-degree murder trial, I was acquitted by a 12-person jury. I have never been convicted of a felony, and on information and belief, I have solely 1 non-violent misdemeanor in my criminal record.

**13.**    At present, I have lived in the United States for over 30-years. As a result of the death of the person who attacked me in September, 1995, I have faced death threats in Sri Lanka, and consequently, I have never gone back to Sri Lanka out of grave concern for my safety.

**14.**    The 22 Defendants-Appellees passed derisive and harsh judgment on me due to my having faced a murder trial in June, 1996 (from which I was Completely Acquitted) and due to my suicide attempt in April, 2013. Consequently, and due to the strong influence of the Catholic Church that permeated throughout SJHHC, the

22 Defendants-Appellees made the unilateral decision to unlawfully confine me for 5-days in the SJHHC psychiatric unit, to deny me any semblance of due process, and they didn't inform me that I had the right to the free legal services of attorneys from the New York Mental Hygiene Legal Services ("NY MHLS"), and thereby they caused me to lose my Second Amendment gun rights.

**15.** Even though I emigrated to the United States in 1989, I'm not yet a Naturalized U.S. Citizen. I have been a U.S. Permanent Resident (a "Green Card" holder) for more than 20-years.

**16.** As a result of the New York MHL §9.27 civil confinement that the 22 Defendants-Appellees unlawfully and unjustly forced upon me in April, 2013, I face the risk of my future U.S. Citizenship Application being denied based on one of the questions contained in the U.S. Citizenship and Immigration Services N-400 Form (U.S. CIS N-400 Form) which askes the citizenship applicant:

On page 11 of 20, Part 12. Additional Information About You (Person Applying for Naturalization).
Question 5. Have you EVER been Declared legally incompetent or been confined to a mental institution?

**17.** Thus, my unlawful, unjust involuntary civil confinement the 22 Defendants-Appellees might be used by U.S. CIS to deny me U.S. Citizenship.

**18.** In addition, as a result of the New York MHL §9.27 civil confinement that the 22 Defendants-Appellees unlawfully forced upon me in April, 2013, I face the risk of having my Readjustment of Status Application and Its Process (under I-130 and I-485 of U.S. Immigration Law) that my U.S. Citizen mother filed/started on my behalf in Fall, 2014, fail.

### III. FROM FALL, 2010, WHEN I MET A LADY ONLINE FROM IRAN AND CONVERTED TO ISLAM (FOR APPROX. 2 ½ YEARS UNTIL I WAS REVIVED FROM MY SUICIDE ATTEMPT IN APRIL, 2013) UNTIL THE PRESENT, I HAVE BEEN SUBJECTED TO SURVEILLANCE, HARASSMENT, INTIMIDATION, AND FEAR BY AGENTS/TROOPERS/DEPUTIES/OFFICERS OF THE JOINT TERRORISM TASK FORCE (JTTF).

**19.** As detailed to some extent in Exhibits "3" and "4," while living in Massachusetts, I met a lady from Iran online in approx. September, 2010, and thereafter converted to Islam and very frequently communicated with her on the phone, using online chat messaging, video chat, email, etc.

**20.** Soon thereafter, I was subjected to persistent surveillance, harassment, intimidation, and fear by, on information and belief, Agents/Troopers/Deputies/Officers of The Joint Terrorism Task Force (JTTF) in Massachusetts. *See* the 16-pages contained in Exhibit "3," and the 46-pages contained in Exhibit "4" (Exhibits 1 - 50 are contained in the Supplementary Papers, Volumes 1 Through 11, which are incorporated in full as attached exhibits of the instant motion).

**21.** After I relocated to Florida in May, 2014, I continued to be subjected to persistent surveillance, harassment, intimidation, and fear by, on information and belief, Agents/Troopers/Deputies/Officers of The Joint Terrorism Task Force (JTTF) in Florida.

**22.** The primary difference between the JTTF surveillance, harassment, intimidation, and fear in Massachusetts and Florida was that the Florida JTTF

Agents/Troopers/Deputies/Officers were overt and very aggressive, whereas those in Massachusetts were more subtle and they tried to be covert about it.

**23.** As detailed in the 16-pages contained in Exhibit "3," the 46-pages contained in Exhibit "4," and the 18-pages contained in Exhibit "6" which is the <u>Audio Transcript of Coerced JTTF Interrogation of Umesh Heendeniya on Jan. 15, 2016</u> (Transcribed by Marsha Johnson of All-Write Transcription & Reporting Services), I was unlawfully, coercively interrogated on Friday, Jan. 15, 2016 by one or more of the 3 JTTF Agents/Troopers/Deputies/Officers from the Tampa-Orlando JTTF. I later found out (through a Florida Public Records Law Request that I filed with the Hernando County Sheriff's Office "HCSO") about who they were and that 2 of them worked for the FBI-JTTF while the 3rd was a HCSO Detective, who is the, on information and belief, assigned as a Task Force Officer with the Tampa-Orlando JTTF. The names of the 3 Tampa-Orlando JTTF law enforcement officers were FBI Special Agent ("SA") Thomas F. Miller ("Tom Miller" or "S.A. Miller"), FBI SA Sonya Yougue ("S.A. Yougue"), and HCSO Detective and JTTF Task Force Officer David Kortman ("Detective Kortman" or "Task Force Officer Kortman").

**24.** As detailed in the 16-pages contained in Exhibit "3," the 46-pages contained in Exhibit "4," I promptly invoked my Fifth Amendment Right Against Self-Incrimination and my Fifth Amendment Due Process Right to Counsel after the 3 Tampa-Orlando JTTF law enforcement officers rang the doorbell and I saw that they were cops. However, they ignored my constitutional protections and coercively

interrogated me against my will, while using subtle intimidation, trickery, and deception.

**25.** When I was unlawfully, coercively being interrogated by one or more of the 3 JTTF agents, after approx. 5 minutes, I informed them that I was going to video record their forced questioning of me. When I retrieved a small videorecorder and began video recording them (what questions they asked me, the facial expressions and body language, etc.), S.A. Miller and TFO Kortman forced me to stop video recording them, and I was forced to only audio record them, thereby missing vital clues of their intimidation of me, their deception, and trickery that was forced upon me through the coercive interrogation that they forced upon me.

**26.** As I was audio recording the 3 JTTF agents' coercive interrogation of me, S.A. Miller would, using guile and undoubtedly years of experience at this, would make certain statements that made no sense to me at the time, but in hindsight I realize he was making in order to insert such statements into the conversation for the agents' benefit (since they knew the audio recorder was on). However, since all 3 agents were openly armed with handguns and I was being intimidated and being interrogated against my will, due to my lack of training and experience (unlike obviously S.A. Miller), at the time I was unable to similarly insert statements into the interrogation like S.A. Miller, who would periodically engage in similar deception in order to memorialize the certain statements (in order to attempt to sanitize the forced interrogation of me despite having repeatedly asserted my constitutional rights). *See*, the 18-pages contained in Exhibit "6" which is the <u>Audio</u>

(Transcribed by Marsha Johnson of All-Write Transcription & Reporting Services).

**27.** Another example of intimidation, and psychological manipulation that S.A. Miller subjected me to was in how he, sometimes slyly but other times overtly, exerted dominance during the coercive interrogation of me. Thus, when I would-- without realizing-- reach a position of subtle control during the forced questioning of me, he would use subtle psychological maneuvering to gain back control and dominance of the "conversation" and the situation/circumstance. Thus, for example, after I had asserted my constitutional rights and additionally showed him that he was violating ethical standards (because there was also a potential conflict of interest due to me having filed the lawsuit against potentially his supervisor), I asked him to write his name and the names of the 2 other agents. When I directed him to do this by giving him a piece of paper, he responded along the lines of "I will write my name and my colleagues names" rather than merely saying "Sure," "Yes," etc. In other words, it was an unnatural, awkward flow of conversation. In hindsight, I realize that he was making these (at the moment and time of the "conversation") unnatural statements during various times of the coercive questioning of me in order for him to maintain control of the interrogation and maintain dominance of the situation/moment *via* subtle psychological maneuvering. Below is a scanned image of S.A. Miller's writing of the 3 JTTF agents' names:



TOM, SONYA, DAVE
Miller YOUGUE KOMMAN

**28.** One of the reasons why I promptly invoked my constitutional rights is because I was/am a firm supporter and believer of the U.S. Constitution, The Bill of Rights, and its principles, and believe that rights that are not vigorously exercised by civilians risk being eventually lost.

**29.** In fact, from approx. 2009 or thereabout, I have had various online data depositories (such as Google Drive, Youtube, Microsoft Sky Drive, ScribD, DropBox, Slideshare, Box, and DocStoc) where I have over time uploaded hundreds of lawful and peaceful PDF and video files that deal with Jurisprudence (The Law) matters.

**30.** Thus, well before the above 3 JTTF agents violated my constitutional rights, for several years I have had many legal How-To files/documents and videos, including PDF copies of The Jailhouse Lawyer's Handbook, The Jailhouse Lawyer's Manual, etc., <u>and</u> numerous Youtube videos on my Youtube channel on legal matters such as: Busted – The Citizen's Guide to Surviving Police Encounters (by Flex Your Rights), 10 Rules for Dealing with Police (by Flex Your Rights), Protect Yourself from FBI Manipulation with Attorney Harvey Silverglate (by ACLU of Massachusetts), Don't Talk to the Police with Attorney James Duane (by Regent University School of Law), etc. (My long time Youtube channel, which contained all of the above videos and much more, and which, on information and belief, had a

URL of [https://www.youtube.com/channel/UCToAOr0HJL06Ad35RxjE4_g](https://www.youtube.com/channel/UCToAOr0HJL06Ad35RxjE4_g), was for some inexplicable reason deleted by Youtube in late, 2018).





YouTube

don't talk to the police + Flex You Rights

10 Rules for Dealing with Police (Full-Length)

3,567,500 views • Apr 30, 2012

38K    1.7K    SHARE    SAVE    ...

Flex Your Rights
200K subscribers

SUBSCRIBE



YouTube

don't talk to the FBI

Protect Yourself from FBI Manipulation (w/attorney Harvey Silverglate)

67,009 views • Aug 31, 2011

594    6    SHARE    SAVE    ...

ACLU of Massachusetts
343 subscribers

SUBSCRIBE



Don't Talk to the Police

3,476,092 views • Mar 20, 2012

LIKE  DISLIKE  SHARE  SAVE  ...

Regent University School of Law
15.1K subscribers

SUBSCRIBE



[https://www.youtube.com/channel/UCToAOr0HJL06Ad35RxjE4_g](https://www.youtube.com/channel/UCToAOr0HJL06Ad35RxjE4_g)



**31.**     Thus, I was overtly and openly advocating law-abiding civilians to lawfully and peacefully assert their Constitutional Rights. As another example of this, in June, 2010, I even reviewed a book on Amazon.com that I had read earlier that year titled "Jailhouse Lawyers," written by an actual jailhouse lawyer inmate by the name of Mumia Abu Jamal, who had aptly written a book on that subject. *See*, next page for a screenshot of my review.



Umesh Heendeniya

☆ ☆ ☆ ☆ ☆ Mumia at his Best!
June 21, 2010
Format: Paperback   Verified Purchase

This book, by a long time victim of the Racist American Criminal Justice System, is long overdue. Thank you Mumia for giving recognition and due respect to the hundreds of unsung heroes ("jail house lawyers") who have fought and continue to fight the uphill battle for justice, in the vicious and unjust American Criminal "Justice" System. Mumia. may God protect you and other jail house lawyers, who face overwhelming odds on being able to receive fair hearings before "impartial judges/justices" (for a non-white criminal defendant or prisoner, the concept of an 'impartial judge' sounds like an oxymoron), while being subject to harassment and/or brutality by the prison/CJS officials. You and other jail house lawyers like you, continue to inspire me.
Umesh Heendeniya
[...]
Marlborough, MA, USA.

4 people found this helpful

**32.**     Subsequent to my coerced interrogation by the 3 Tampa-Orlando JTTF law enforcement officers, through research I have found out that there are many other people who have been targeted by JTTF law enforcement officers or FBI agents throughout the United States.

This concludes my declaration that contains paragraphs numbered 1 through 32.

Dated:    *Nov. 07, 2019.*

Hernando County,               Umesh Heendeniya
Florida.                                    (508)-630-6757.

## ARGUMENT

Based on the following legal authorities, Heendeniya respectfully moves The Court to enter an order: **(i).** To reinstate the appeal and grant him leave to file the Appellant's brief and the 5th volume of the 5-volume appendix; **(ii).** To accept the 50-Exhibits that are contained in the 11 (eleven) Volumes of the Supplementary Papers, which exhibits are referred to and incorporated fully in the instant motion and are an essential & integral part/supplement of this motion; **(iii).** To order the Defendants-Appellees to prepare and file the appellees' briefs.

**Fed. R. App. P. 2. Suspension of Rules:**
 On its own or a party's motion, a court of appeals may -- to expedite its decision or for other good cause -- suspend any provision of these rules in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b).


**Local Rule 27.1(i). Motion to Reinstate Appeal:**
 A party that files a motion to reinstate the appeal following dismissal for failure to timely file a brief must do so within 14 days of the date of the order dismissing the appeal. The party's brief must be attached as an exhibit to the motion.


"This Court ordinarily has discretion to reinstate an appeal that has been dismissed for appellate default. See McHale v. United States, 175 F.3d 115, 120 (2d Cir. 1999); Fed. R. App. P. 2." *Wapnick* v. *Commissioner of Internal Revenue*, 365 F. 3d 131 (2d Cir. 2004).

> If we dismiss an appeal for appellate "default," we generally may reinstate it for good cause shown or "where manifest injustice would otherwise result." Fed. R. App. P. 2 advisory committee's note to 1967 adoption; see Wapnick v. Comm'r of Internal Revenue, 365 F.3d 131, 132 (2d Cir.2004) (per curiam); Calloway v. Marvel Entm't Group, 854 F.2d 1452, 1475 (2d Cir.1988), rev'd in part on other grounds sub nom Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). Manifest injustice can result when the denial of the motion to reinstate bars an otherwise meritorious claim. See Calloway, 854 F.2d at 1475-76 (examining merits of underlying claim).

*Lattanzio* v. *Comta*, 481 F. 3d 137 (2d Cir. 2007).


> Were Calloway now to file a motion to reinstate the appeal, we would certainly grant it. Cf. Avlon v. Greencha Holding Corp., 232 F.2d 129 (2d Cir.1956) (after misunderstanding as to which of several attorneys would handle appeal, motion for leave to file brief granted more than three years after records had been filed). Fed.R.App.P. 2 clearly authorizes us to relieve litigants of the consequences of default "where manifest injustice would otherwise result." Fed.R.Civ.P. 2 advisory committee's notes. The potential of such an injustice clearly exists in the present case, and we believe that the appeal should be reinstated and the judgment against Calloway remanded.

The issue here is not simply the plight of a pro se appellant with a viable claim of error who abandons his or her appeal.

*Calloway* v. *Marvel Entertainment Group*, 854 F. 2d 1452 (2d Cir. 1988).

The U.S. Supreme Court has noted in several instances that when a litigant is proceeding *pro se*, the litigant's documents are "to be liberally construed," <u>Estelle v. Gamble</u>, 429 US 97, 106, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 95 (2007).

<u>See also</u>, C. Wright & A. Miller, Federal Practice and Procedure § 1165, p. 475 (2d ed. 1987) (Rule 6(b) "gives the court extensive flexibility to modify the fixed time periods found throughout the rules, whether the enlargement is sought before or after the actual termination of the allotted time").

Umesh Heendeniya
*Pro Se*, Mentally and Physically Disabled Plaintiff-Appellant
P. O. Box 5104
Spring Hill
FL – 34611
(508)-630-6757
heendeniyavsjosephshospitalny@gmail.com

Dated: Thursday, November 07, 2019.