# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### No. 18-3553 and No. 19-0748

### UMESH HEENDENIYA,

### Plaintiff-Appellant

### v.

### ST. JOSEPH'S HOSPITAL HEALTH CENTER; ROGER GARY LEVINE, MD; LISA MARIE O'CONNOR, MD; GEORGE O. TREMITI, MD; HORATIUS ROMAN, MD; JOANNE MARY FRENCH, RN; WENDY BRISCOE, RN; SUSAN LYNN CATE, LMFT; ROSALINE SPINELLA, RN; ROBERT MICHAEL CONSTANTINE, MD; MITCHELL BRUCE FELDMAN, MD; CYNTHIA A. RYBAK, NP; KATHRYN HOWE RUSCITTO; LOWELL A. SEIFTER, JD; MEREDITH PRICE; DEBORAH WELCH; GAEL GILBERT, RN, MBA; SJHHC DOES 1-5 INCLUSIVE,

### Defendants-Appellees

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT,

### NORTHERN DISTRICT OF NEW YORK

### PLAINTIFF-APPELLANT'S BRIEF ON APPEAL
#### (Disability Accommodation From The Court Requested)

Umesh Heendeniya
*Pro Se*, Mentally and Physically Disabled Plaintiff-Appellant
P. O. Box 5104
Spring Hill
FL – 34611
(508)-630-6757
heendeniyavsjosephshospitalny@gmail.com

Dated: Wednesday, November 06, 2019.

# JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Plaintiff-Appellant Heendeniya's claims against the Defendants-Appellees pursuant to 28 USC § 1331 [statute authorizes jurisdiction of civil actions arising under the constitution, laws and treaties of the United States]; 28 USC§ 1332 [statute authorizes jurisdiction of civil actions arising under diversity of citizenship]; 28 U.S.C. § 1367 [statute authorizes jurisdiction of civil actions arising under supplemental jurisdiction]; and 28 U.S.C. §§ 2201 and 2202 [declaratory judgment statutes].

On Oct. 25, 2018, the District Court granted the Defendants' motion to dismiss for failure to prosecute, or, in the alternative, for summary judgment, and/or failure to comply with discovery requests, and entered judgment in favor of the Defendants.

Thereafter, on Nov. 23, 2018, Heendeniya filed a motion under Fed. R. Civ. P. 59 and Fed. R. Civ. P. 60(b)(6) requesting relief from the District Court, and hence he filed a first notice of appeal with The Second Circuit on Nov. 25, 2018, and a second notice of appeal with The

Second Circuit on March 25, 2019, both notices pursuant to Fed. R. App. P. 4(a)(1)(A), Fed. R. App. P. 4(a)(4), 28 USC §2107, and 28 USC 1291.

Therefore, The Court of Appeals has jurisdiction to hear the appeal pursuant to 28 USC 1291 because the appeal is from a final judgment of the District Court entered on Oct. 25, 2018 which dismissed Heendeniya's complaint and disposed of all of his claims.

## STATEMENT OF THE ISSUES

I.  Heendeniya is both a non-attorney *pro se* litigant **and/plus** he is a mentally disabled litigant. Thus, he should be given significant extra-time leeway <u>combined with</u> special solicitude that well exceeds time enlargements given to a "solely *pro se*" litigant.

II. The District Court for The Northern District of New York did provide Heendeniya time leeway and special solicitude that was congruent for a litigant who is a *pro se* non-attorney. However, with great respect to the District Court, Heendeniya was not provided the significant extra time leeway <u>combined with</u> special solicitude that should have been afforded to a *pro se* non-attorney who is also mentally disabled, and who requested on several occasions, reasonable disability accommodations from the District

Court pursuant to Title II of the ADA, Section 504 of the

Rehabilitation Act of 1973, The Fifth and Fourteenth

Amendments to the U.S. Constitution (the Equal Protection clause

and/or the Due process clause), The Petition Clause of the First

Amendment, *Tennessee* v. *Lane*, 541 U.S. 509 (2004), *California

Motor Transport Co.* v. *Trucking Unlimited*, 404 US 508, 510

(1972), *Alexander* v. *Choate*, 469 U.S. 287, 301 (1985), *Kennedy* v.

*Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999), *Oconomowoc

Residential Programs* v. *City of Milwaukee*, 300 F.3d 775, 784 (7th

Cir. 2002), and the prior listed cases' progeny.

## STATEMENT OF THE CASE

## I. TWO WRONGS CAN NEVER MAKE A RIGHT.

This case is about how the 22 Defendants-Appellees passed harsh

judgement on Heendeniya in April, 2013, because he had been acquitted

by a 12-person jury of a murder charge in June, 1996 (A112)[1], combined

with the fact that he had attempted suicide (A178 - A182) shortly prior

to being brought to the medical care of the Defendants.

---

[1] References to pages in the 5-volume Record Appendix will be denoted as "(A<page #>)". Ex.: (A700) or (A318 - A340)

The Defendants were required under the law and by medical ethics to provide competent care for Heendeniya, in order to avoid liability and a resultant medical malpractice lawsuit due to substandard medical care and treatment. The Defendants were required under the law and by medical ethics to do "no harm" and to ensure that, in addition to providing competent medical care & treatment, they would not harm Heendeniya's fundamental constitutional rights that are guaranteed under the U.S. Constitution-- including his Second Amendment Rights which he cherishes as an Honorably Discharged Former U.S. Marine. (A60 - A62)

The Defendants failed in this regard, due to either their commission or omission of intentional malfeasance or negligence as a result of them unlawfully confining Heendeniya pursuant to New York Mental Health Law §9.27 (henceforth, "NY MHL §9.27"), by repeatedly and falsely writing in NY MHL §9.27 Official Forms that he had been treated for a long time for a Psychotic Disorder (Schizoaffective Disorder). At least 3 of the Physician-Defendants in this case **lied** when they signed the NY official civil commitment forms by writing that

Heendeniya had been treated for a long time for Schizoaffective Disorder. (A178 - A182)

Heendeniya has <u>never been diagnosed or been treated for any psychotic disorder</u>, and instead he has been treated for a lengthy period for a Mood Disorder (Type-2 Manic Depression) and an Anxiety Disorder (Posttraumatic Stress Disorder-- PTSD). (A78 and A104)

As a result of the actions or omissions of the Defendants, Heendeniya has potentially permanently lost his Second Amendment Right to possess firearms at his home for lawful self-defense, due to the operation of federal penal code 18 USC §922(g)(4). (A250 -A252) and (A184)

To make matters worse, even though Heendeniya informed the Defendants that he is a lawful permanent resident (a "Green Card" holder) and not a U.S. Citizen, now as a result of the Defendants unlawfully confining him per New York MHL §9.27, he is potentially unable to naturalize and become a U.S. Citizen (A756 - A757), and additionally, he faces the risk and the prospect of being unable to successfully complete the Readjustment of Status that his U.S. Citizen

mother had begun for him pursuant to a I-130 petition and the I-485 immigration procedure. (A759 - A760) and (A753 - A754)

A significant factor is that the Defendants were either directly owned, controlled, and/or influenced by <u>The Catholic Church</u> due to their financial interests, livelihood, significant income source, or because The Catholic Church strongly influences the "culture of SJHHC." (i.e., St. Joseph's Hospital Health Center)

Thus, given in part to the influence and culture of the catholic church, or due to negligence, the Defendants refused to allow Heendeniya, to leave St. Joseph's Hospital Health Center (henceforth, "SJHHC"), and go stay with his sister who was an Emergency Medical Physician who worked at SJHHC at the time and who lived in a nearby suburb.

Instead, the Defendants forcefully confined him in the psychiatric unit of SJHHC for 5-days based on them repeatedly lying on the New York MHL §9.27 official forms.

During the 7-days that Heendeniya was kept in the ICU and the general medical wing of SJHHC, he was behaving calmly and

respectfully to everyone, and he indicated no suicidal or homicidal ideations whatsoever.

During the 7-days prior to being unlawfully confined in the psychiatric unit for 5-days, the Defendants didn't make the necessary effort to call and speak to Heendeniya's treating psychiatrist to confirm whether he was being treated for a psychotic disorder.

In fact, the Defendants even refused to allow Heendeniya to voluntarily admit himself to the psychiatric unit of SJHHC so he could avoid the unlawful, involuntary civil commitment.

Washington v. Glucksberg, 521 U.S. 702, 720 (1997) - Substantive Due Process Protects Fundamental Rights and Liberty Interests.

By keeping Heendeniya for five (5) days in the psychiatric unit and not informing him, nor giving him any paperwork throughout that time that notified him of his right to challenge his involuntary admission in a New York State Court using the free, MHLS attorneys' assistance (A241 - A242), SJHHC defendants violated the law on multiple occasions. Since SJHHC defendants knew that after five days, MHL requires that they provide Heendeniya's family members paperwork that notified them of his right to challenge the involuntary

admission using MHLS at cost to New York State (*See* MHL 9.29(b)), SJHHC defendants released Heendeniya on the fifth day, knowing that Heendeniya's Second Amendment rights had successfully been implicated through the firearm prohibition contained in 18 USC § 922(g)(4).

*See*, *Christine Q.O.* v. *Capital Dist. Psychiatric Ctr.*, 487 N.Y.S.2d 167, 168 (N.Y.App. Div., 3d Dep't 1985) (dismissing appeal from order denying as moot patient's application for a hearing pursuant to N.Y. Mental Hyg. Law §9.39 because she was no longer being confined to psychiatric center pursuant to N.Y. Mental Hyg. Law §9.39).

Case law such as *Christine*, *Supra*, and its legal effect applies to patients such as Heendeniya who were involuntarily admitted under MHL §9.27, so that after the brief 5-day stay in SJHHC's psychiatric ward, he would be unable to get the legal representation from the attorneys from the NY MHLS to contest the illegality of his involuntary admission. (A241 - A242) and (A171 - A176)

The Defendants knew that involuntary admission under New York MHL §§ 9.01, 9.27 requires very restrictive requirements and

justifications to involuntarily admit a patient. See below 2 legal

authorities:

> Admission criteria under section 9.27 (involuntary admission
> on medical certification) are more restrictive, requiring some
> measure of judgmental impairment. Such an individual
> must be shown to be "mentally ill and in need of involuntary
> care and treatment," meaning "that [the] person has a
> mental illness for which care and treatment as a patient in a
> hospital is essential to such person's welfare and whose
> judgment is so impaired that he is unable to understand the
> need for such care and treatment.

*Project Release* v. *Prevost*, 722 F. 2d 960, 65-66 (2d Cir. 1983).

> Before an examining physician completes the certificate of
> examination of a person for involuntary care and treatment,
> he shall consider alternative forms of care and treatment
> that might be adequate to provide for the person's needs
> without requiring involuntary hospitalization. If the
> examining physician knows that the person he is examining
> for involuntary care and treatment has been under prior
> treatment, he shall, insofar as possible, consult with the
> physician or psychologist furnishing such prior treatment
> prior to completing his certificate. Nothing in this section
> shall prohibit or invalidate any involuntary admission made
> in accordance with the provisions of this chapter.

New York MHL § 9.27(d).

Thus Defendants-Appellants exploited the above cited loophole in

the NY MHL by not making a reasonable effort to get in touch with

Heendeniya's psychiatrist Dr. Lovett in Massachusetts so that his

correct psychiatric diagnosis (which was Type-2 Manic Depression and

PTSD) could be obtained or verified against the Defendants' erroneous diagnosis or so he could be released to his regular treating psychiatrist.

Had the Defendants not been able to falsely document Heendeniya as having long-term Schizoaffective Disorder, they would not have been able to justify having involuntarily admitted Heendeniya after observing him for 7-days being calm, being respectful to everyone, and not expressing any suicidal or homicidal behavior.

Thus, by not supplying copies of the involuntary admission paperwork to Heendeniya immediately upon his admission or throughout his stay in the psychiatric ward notifying him of the free services of New York MHLS so he has the ability to challenge his unlawful, involuntary admission; and by keeping him for five days, and then only releasing him, obviating the requirements to notify his family about the free services of NY MHLS so Heendeniya or they could challenge his involuntary admission, the Defendants achieved their objective of implicating Heendeniya in NY MHL § 9.27(c) and 18 USC §922(g)(4), and thus potentially stripping him of his right to purchase or possess firearms and ammunition (i.e., the exercise of his Second Amendment rights) indefinitely. (A171 - A176) and (A498 - A539)

Thus, even though the Second Circuit stated 32-years ago in *Project Release*, 722 F. 2d at 960, that New York State MHL satisfies psychiatric patients' due process rights requirements, Heendeniya was intentionally and/or negligently not provided with even minimal due process safeguards under NY MHL in his unlawful, involuntary admission into SJHHC's psychiatric ward.

In regards to *Project Release* v. *Prevost*, 722 F. 2d 960, 65-66 (2d Cir. 1983), at the time the Second Circuit made the ruling in 1983 in *Project Release*, The Second Amendment to the Constitution was not thought of as providing people a fundamental constitutional right to bear firearms for self-defense. That legal rule wouldn't take place until the U.S. Supreme Court ruled in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) and *McDonald* v. *Chicago*, 561 U.S. 742 (2010) that the Second Amendment protects an individual's right to keep and bear arms for self-defense.

It is important to note that after the Heller and McDonald decisions, two U.S. Court of Appeals panels have granted previously involuntarily committed persons their firearm rights back. See *U.S.* v. *Rehlander*, 666 F.3d 45 (1st Cir. 2012) and *Tyler* v. *Hillsdale County*

*Sheriffs Dept.*, 775 F. 3d 308 (6th Cir. 2014)(subsequently limited by an *en banc* panel).

The fact is, "A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Delaney* v. *Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing *Doe* v. *New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

'The major grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."' *Doe* v. *New York City Dept. of Social Services*, 709 F. 2d 782, 789 (2d Cir. 1983).

In the *Heller* and *McDonald* U.S. Supreme Court decisions, what the Court meant by 'mentally ill' people, were in fact those who were afflicted with very serious mental illnesses such as Schizophrenia, Psychosis, Paranoid Delusions (i.e., the insane, those detached from reality). Were it not the case, then tens of millions of people getting treatment for mental illnesses such as Depression, Anxiety, PTSD,

Manic Depression (i.e., mental illnesses that are not very serious, such that the patients are not insane or detached from reality) would fall under the purview of those who are "mentally ill" as stated in the Supreme Court and lower Court opinions dealing with firearm rights and involuntary commitment (including wording in the 18 USC §922(g)(4) statute).

The fact is, by exercising a Trial Court's equity power, a Trial Court can order that any and all records pertaining to unlawfully & unjustly, involuntarily committed military veterans such as Heendeniya's involuntary admission to SJHHC's psychiatric unit, that are in the possession and/or control of any government authorities and any and all Defendants to this legal action, be permanently expunged. *See*, *Goss* v. *Lopez*, 419 U.S. 565, 571-72 (1975) (affirming decision that had provided for expungement as remedy in§ 1983 action); *Bradley* v. *Coughlin*, 671 F.2d 686,690 n. 9 (2d Cir. 1982) (section 1983 plaintiff may be entitled to expungement of prison disciplinary proceeding); *Thomson* v. *Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995) (reversing dismissal of claims seeking expungement as remedy in § 1983 action); *Wolfel* v. *Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (affirming

expungement of prison records as an appropriate§ 1983 remedy);
*Monroe* v. *Thigpen*, 932 F.2d 1437, 1443 (11th Cir. 1991) (remanding
with instructions to expunge prison records); *Knapp* v. *Whitaker*, 757
F.2d 827, 846-47 (7th Cir. 1985) (district court in §1983 action properly
expunged material in teacher's personnel records).

The above cited legal authorities necessarily brings two other
factors that have to be addressed in regards to military veterans who
have honorably served our great nation, and when they suffer
psychiatric injuries (such as PTSD and Depression), medical
professionals such as the Defendants-Appellees exploit unjust legal
loopholes to make the military veteran lose his/her fundamental
constitutional firearm rights via 18 USC §922(g)(4).

First, according to the Department of Veterans Affairs
(henceforth, "the VA"), approximately 15% to 30% of Vietnam War
veterans, approximately 12% of Gulf War (Desert Storm) veterans, and
approximately 11-20% of Operation Iraqi Freedom (OIF) and Enduring
Freedom (EF) suffer from PTSD. It is a foregone conclusion, that more
often than not, those who suffer from PTSD invariably develop
depression. The fact is, PTSD, Depression, or Type-2 Bipolar Disorder

(Type-2 Manic Depression) are not extremely serious mental illnesses that cause psychosis, insanity, or paranoid delusions (i.e., results in detachment from reality). Were it the case, and if it was true that the U.S. Supreme Court and lower Courts meant to include those diagnosed with mental illnesses that were not very serious (i.e., depression, anxiety, PTSD, manic depression) into the "mental illness" category as understood by 18 USC §922(g)(4), the *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), and the *McDonald* v. *Chicago*, 561 U.S. 742 (2010) Supreme Court decisions, then approximately 300,000 military veterans from the Iraq and Afghanistan wars (on information and belief, approximately 1.5 million military veterans have served during these two recent wars) presumptively fall into the category of those who have "mental illness" as defined by the U.S. Supreme Court and lower Courts.

This unfair logical conclusion and its insulting ramification can be easily overcome by recognizing the fact that the Courts were only referring to insane people (psychotics, delusional, and deeply disturbed people) when they use the term "mentally ill" or "mental illness." It would be a travesty of justice if those who had carried and used

firearms to defend our nation, as a result of their experiences, developed mental illnesses that were not very serious (i.e., not extremely serious mental illness) and consequently were to be categorized under the law as those who should be prohibited from possessing firearms to protect themselves or their loved ones, because they are mentally ill or have "mental illness."

The legal footing of 18 USC §922(g)(4) is unsound when one considers the fact that it fails to meet the requirements of the Equal Protection clause of the Fifth and Fourteenth Amendments, because as part of several affirmative defenses that are available under 18 USC §922(g)(4), those who are involuntarily committed by a Federal Department or Agency have 5 (five) different basis under which to obtain relief, while people such as Heendeniya (and millions of others) have no such meaningful recourse (note: 18 USC §925(c) exists only on paper. But the fact is, since October, 1992, the Bureau of Alcohol Tobacco Firearms and Explosives' (ATF's) annual appropriation has prohibited it from expending funds to act upon applications for relief from federal firearms disabilities submitted by individual persons. This is yet another example of a legal loophole that either law enforcement

or medical authorities exploit to take away military veterans'
Fundamental Constitutional Right to Possess Firearms).

Since his release from SJHHC in mid-April, 2013, Heendeniya has
never been admitted to any psychiatric facility, he has never engaged in
any homicidal or suicidal ideations or behavior,

On July 18, 2016, Heendeniya filed the second amended complaint
in the instant case, before Honorable Glenn T. Suddaby, Chief District
Judge for The Northern District of New York.

On October 25, 2018, the District Court entered a Decision and
Order granting the 22 Defendants' request for dismissal of the instant
case. On the same day, the Court entered Judgment in favor of the
Defendants.

<u>**STANDARD OF REVIEW**</u>

I.   **Motion to Dismiss for Lack of Prosecution Under Fed. R. Civ. P.
     37(b).**

Rule 37(b) provides that when a party fails to comply with a
discovery order, a court may impose sanctions, including
"striking pleadings in whole or in part" and "rendering a
default judgment against the disobedient party." Fed. R. Civ.
P. 37(b)(2)(A). While we have expressed a preference for
resolving disputes on the merits rather than by default, see,
e.g., *Marfia* v. *T.C. Ziraat Bankasi, New York Branch* 100
F.3d 243, 249 (2d Cir. 1996), we have also consistently
recognized that Rule 37 sanctions are applicable in "extreme

circumstances," where "a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc.* v. *Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (internal quotation marks omitted); see also *Bobal* v. *Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990).

We review a district court's imposition of sanctions under Rule 37 for abuse of discretion and the factual findings in support of the district court's decision for clear error. *S. New England Tel. Co.* v. *Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010). In "evaluating a district court's exercise of discretion" to impose Rule 37 sanctions, we have relied upon factors including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of... noncompliance." *Agiwal* v. *Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (internal quotation marks omitted). Rule 37 sanctions, including the most severe, "may be imposed... against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result" in a sanction. *Valentine* v. *Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (affirming dismissal sanction after a pro se plaintiff failed to appear for his deposition); see also *Bobal*, 916 F.2d at 764 (explaining that, before the district court dismissed a case as a Rule 37 sanction, the district court should have informed pro se litigant that violation of a court order would result in such a dismissal).

Having reviewed the record in light of these principles, we affirm the district court's judgment. The record amply demonstrates that: (1) Dowbenko repeatedly failed to respond to interrogatories and produce documents requested by Robertson, in violation of the district court's orders of December 2005, March 2006, and July 2006; (2) the district court appropriately rejected lesser sanctions as inadequate given Dowbenko's continued noncompliance after multiple explicit warnings about the consequences of further

noncompliance; (3) the period of noncompliance delayed progress in the case for more than two years; (4) Dowbenko was given ample notice that further noncompliance would result in sanctions, including the entry of default judgment; and (5) Dowbenko's noncompliance was willful and deliberate, as evidenced by his repeated failures to comply even after he had explicitly acknowledged his discovery obligations at an March 2006 teleconference. We identify no abuse of discretion in the district court's entry of default judgment against Dowbenko.

*Robertson v. Dowbenko* (2d Cir. 2011).

Rule 37 of the Federal Rules of Civil Procedure states that "[i]f a party... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders," including, inter alia, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i), (ii).[3] We accord deferential review to a district court's imposition of Rule 37 discovery sanctions, and we will reverse only for abuse of discretion, which we will not identify absent an error of law, a clearly erroneous finding of fact, or a decision that cannot be located within the range of permissible options available to the district court. *See Southern New England Tel. Co.* v. *Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010); see also *Chevron Corp.* v. *Donziger*, 833 F.3d 74, 147-48 (2d Cir. 2016). In imposing Rule 37 sanctions, as well as in reviewing a sanctions order for abuse of discretion, courts properly consider various factors, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Southern New England Tel. Co.* v. *Global NAPs*

*Inc.*, 624 F.3d at 144 (internal quotation marks omitted); see also id. (observing that factors are "not exclusive").

*Funk v. Belneftekhim*, 861 F. 3d 354 (2d Cir. 2017).

## II. Motion to Dismiss Under Fed. R. Civ. P. 41(b) for Lack of Prosecution or Failure to Comply With a Court Order.

On appeal, Wynder challenges the district court's Rule 41(b) dismissal. We have jurisdiction to consider his challenge because a dismissal without prejudice that does not give leave to amend and closes the case is a final, appealable order under 28 U.S.C. § 1291. *See Elfenbein* v. *Gulf & Western Indus., Inc.*, 590 F.2d 445, 448 (2d Cir.1978) (if plaintiff is not given leave to amend, the order of dismissal is final and appealable); *Allied Air Freight, Inc.* v. *Pan Am. World Airways, Inc.*, 393 F.2d 441, 444 (2d Cir.1968) ("dismissals with and without prejudice are equally appealable as final orders"). In considering the merits, we review Rule 41(b) dismissals for abuse of discretion. See Spencer v. Doe, 139 F.3d 107, 112 (2d Cir.1998). And, of course, a district court abuses its discretion when "its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or ... its decision — though not necessarily the product of a legal error or a clearly erroneous factual finding — cannot be located within the range of permissible decisions." *Zervos* v. *Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001) (footnote omitted).

*Wynder v. McMahon*, 360 F. 3d 73, 76 (2d Cir. 2004).

Rule 41(b) of the Federal Rules of Civil Procedure permits a district court to dismiss an action when a plaintiff fails to prosecute or to comply with a court order. Fed. R. Civ. P. 41(b). We review a district court's dismissal of a complaint for failure to prosecute for an "abuse of discretion." See, e.g., *Ruzsa* v. *Rubenstein & Sendy Attys at Law*, 520 F.3d 176,

177 (2d Cir. 2008); cf. *Sims* v. *Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions . . . ." (internal alteration, citations, and quotation marks omitted)). We are mindful, however, that dismissal of a complaint under Rule 41(b) is a "harsh remedy" that should "be utilized only in extreme situations," especially when the plaintiff is a pro se litigant. *Minnette* v. *Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993). The propriety of a Rule 41(b) dismissal depends on the balancing of the following factors, none of which is dispositive: (1) the duration of the plaintiffs' failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. See *United States ex rel. Drake* v. *Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

*Snyder* v. *New York State Education Department* (2d Cir. 2009).

## ARGUMENT

an error, even if clear or obvious, must "'affec[t] substantial rights,111 which normally "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States* v. *Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Fed.R.Crim.P. 52(b)) (emphasis added); see, e.g., *United States* v. *Marcus,_* U.S._, 130 S.Ct. 2159,2164, 176 L.Ed.2d 1012 (2010) (whether "the error 'affected the appellant's substantial rights, ... in the ordinary case[,] means' [whether] it 'affected the outcome of the district court

proceedings'") (quoting *Puckett* v. *United States*, 556 U.S. 129, 129 S.Ct. 1423, 1429, 173 L.Ed.2d 266 (2009)).

*Bennett v. US*, 663 F. 3d 71 (2d Cir. 2011).

> We recognize that a litigant's failure to comply with Rule 28 does not automatically preclude us from considering an issue. Just as it is within our discretion to decide certain legal questions sua sponte, e.g., *Lambert* v. *Genesee Hosp.*, 10 F.3d 46, 56 (2d Cir.1993) (failure to state a claim), cert. denied, ___ U.S. ___, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994), we may overlook a litigant's failure properly to present an issue on appeal in unusual circumstances, one being where manifest injustice would otherwise result. Fed.R.App.P. 2 ("In the interest of expediting decision, or for other good cause shown, a court of appeals may ... suspend the requirements or provisions of any of these rules in a particular case"); see, e.g., *United States* v. *Babwah*, 972 F.2d 30, 35 (2d Cir.1992); *United States* v. *Loya*, 807 F.2d 1483, 1487 (9th Cir.1987); *United States* v. *Anderson*, 584 F.2d 849, 853 (6th Cir.1978).

*Frank* v. *US*, 78 F. 3d 815 (2nd Circuit 1996).

> The U.S. Supreme Court has noted in several instances that when a litigant is proceeding pro se, the litigant's documents are "to be liberally construed," *Estelle* v. *Gamble*, 429 US 97, 106, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson* v. *Pardus*, 551 U.S. 95 (2007).

> The Supreme Court further stated that "allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers", *Haines* v. *Kerner*, 404 U.S. 519, 520-21 (1972).

On occasions too numerous to count, we have reminded district courts that "when [a] plaintiff proceeds pro se,... a court is obliged to construe his pleadings liberally." *McEachin* v. *McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ... This is particularly so when the pro se plaintiff alleges that her civil rights have been violated. *See McEachin*, 357 F.3d at 200. Accordingly, the "dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin* v. *KeyCorp*, 521 F.3d 202, 216 (2d Cir.2008). The District Court, in its evaluation of plaintiff's pro se complaint, failed to apply these directives.

*Sealed Plaintiff* v. *Sealed Defendant* # 1, 537 F. 3d 185, 191 (2d Cir. 2008).

"[a] pro se complaint is to be read liberally." *Branum* v. *Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

The plethora of above legal authorities should lead to the logical conclusion that, given *pro se* litigants are afforded generous time enlargements when facing Legal Professionals who're members of The Bar, a non-attorney litigant such as Heendeniya who is both *pro se* and who has documented mental disabilities should be afforded greater time extensions and enlargements than were granted by the District Court in the instant case. The time enlargements given to Heendeniya were certainly appropriate had he been solely a *pro se* litigant, and had he not repeatedly wrote to the District Court asking for extra, reasonable

time extensions (based on his disability status <u>and/plus</u> his *pro se* status) that were beyond what is given to *pro se* non-attorneys.

However, with <u>Great Respect</u> to The District Court, the Court continued to ignore Heendeniya's Reasonable Disability Accommodation Requests made by him through having written specific U.S. Supreme Court caselaw, Second Circuit caselaw, and Statutory Authorities in his requests to the District Court (in terms of very generous, <u>repeated time enlargements</u> to perform <u>complex tasks</u> such as researching, preparing, and writing legal memorandums; researching and writing Plaintiff's discovery requests, and responding to Defendants' discovery requests).

Rather than providing the reasonable disability accommodations to Heendeniya, in addition to the time enlargements that were necessary based on consideration of solely his *pro se* non-attorney status, on several occasions the Honorable District Court ordered that "PLAINTIFF IS ADVISED THAT NO FURTHER EXTENSIONS WILL BE GRANTED," "THIS IS A FINAL EXTENSION. NO FURTHER EXTENSIONS WILL BE GRANTED," and once stated in an order that "Plaintiff is advised that this extension, as with all prior extensions granted to both plaintiff and defendants in this case, have been granted

as a courtesy of the Court which is afforded to all parties. Plaintiff's alleged disability has no bearing on the granting or denial of these extension requests, and it is unnecessary for Plaintiff to include such an argument in every request. The Court finds that a two-week extension of the deadline to file objections is sufficient, and no further extensions will be granted without good cause shown." Heendeniya writes the prior with Great Respect to The District Court, but he respectfully posits that the District Court was erroneous.

In addition, See the "Discovery Games" that the 3 groups of Attorneys representing the 22 Defendants-Appellees played:

1. Heendeniya's Interrogatories submitted to the 5 Physician-Defendants: (A854 - A937)

2. The non-responses and evasion by the 5 Physician-Defendants: (A964 - A1057) and (A1058 - A1163)

## CONCLUSION

I apologize to The Court for the 'missing the table of contents' and the 'missing table of authorities.' Due to the time constraint to submit this Appellant's Brief (this Blue Brief is late), and Heendeniya's desperate need to avoid having The Court issue the mandate for the

presently administratively dismissed instant appeal[2], he will

regretfully submit this incomplete blue brief, but he will make an actual

argument in the Reply Brief (the Grey Brief).

Respectfully submitted,

Umesh Heendeniya

*Pro Se*, Mentally and Physically Disabled Plaintiff-Appellant

P. O. Box 5104

Spring Hill

FL – 34611

(508)-630-6757

heendeniyavsjosephshospitalny@gmail.com

Dated: Thursday, November 07, 2019.

---

[2] Because he missed the Oct. 21, 2019 deadline to submit this Blue Brief after being granted approx. 6 months by The Court to research, prepare, write, and submit the Brief and the Appendix.

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(g)

I, Umesh Heendeniya, hereby certify that: (i). given my documented mental disabilities and *pro se* status; and (ii). given opposing counsels' treatment of me and their hardball, slash-and-burn approach to this case; to the best of my knowledge and ability, the plaintiff-appellant's brief and appendices complies with the Rules of Court that pertain to the filing of principal briefs and appendices.

In addition, this brief complies with Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains approx. 5600 words. Furthermore, this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2019 in 14-point Century font.

/s/ *Umesh Heendeniya*
Umesh Heendeniya
*Pro Se*, Mentally and Physically Disabled Plaintiff-Appellant
P. O. Box 5104
Spring Hill
FL – 34611
(508)-630-6757
heendeniyavsjosephshospitalny@gmail.com

Dated: Thursday, November 07, 2019.

